UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Focus Direct, Inc., and
William J. Robbins,

Plaintiffs,

vs.

EcoWater Systems, Inc.,

Defendant.

Civil. No. 01-1019 JRT/FLN

**REPORT AND RECOMMENDATION**

---

William R. Skolnick, Rolin L. Cargill, G. Philip Anderson, and John O. Belcher, for Plaintiffs.
Lawrence Roman Commers, for Defendant.

---

**THIS MATTER** came for a hearing before the undersigned United States Magistrate Judge on October 26, 2001, on Defendant's Motion to Dismiss: (1) Count I (Breach of Contract); (2) Count III (Conversion); (3) Count VII (Deceptive Trade Practices); (4) Count VIII (Breach of Duty of Loyalty); (5) Count IX (Unfair Competition); (6) Count XII (Unjust Enrichment); (7) Count XIII (Quantum Meruit); (8) Count XI (Constructive Trust); and (9) Count XIV (Civil Conspiracy) of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendant also seeks to dismiss: (1) Count IV (Intentional Misrepresentation); (2) Count V (Negligent Misrepresentation); and (3) Count X (Fraud) of the Complaint Pursuant to Fed. R. Civ. P 9(b) and 12(b)(6). For the reasons which follow, this Court will recommend that Defendant's Motion be denied, with the exception of Counts VII and XIV, which will be dismissed pursuant to the parties' stipulation.

FILED NOV 29 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

## I. FACTUAL BACKGROUND

This action arises from the alleged breach of contract, misappropriation of trade secrets, conversion, intentional misrepresentation, negligent misrepresentation, breach of trademark, breach of duty of loyalty, unfair competition and fraud inflicted on Plaintiffs, Focus Direct, Inc. and William J. Robbins ( "Focus" and "Robbins") by Defendant, EcoWater Systems Inc. ("EcoWater"). Robbins is the President and sole shareholder of Focus. In considering Defendant's motions, the facts are recounted (as they must be) from a fair reading of Plaintiffs' version of the evidence. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Ring v. First Interstate Mfg., Inc., 984 F.2d 924 (8th Cir. 1993); Klett v. Pim, 965 F.2d 587, 589 (8th Cir. 1992); United States v. Aceto Agric. Chem. Corp., 872 F.2d 1373, 1376 (8th Cir. 1989); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986).

In March 1999, Chris Wilker, EcoWater's National Sales Manager in Nashville, Tennessee, arranged a meeting between Robbins and EcoWater. (See Compl. at 2.) The purpose of the meeting was for Robbins to present an advertising and business plan to EcoWater that included an integrated marketing program and lead generation system. (Id.) The plans were generated specifically to present to EcoWater. (Id. at 3.) Prior to the meeting, EcoWater signed a "Confidential Disclosure Agreement" ("Agreement") on May 10, 1999, which provided that EcoWater would treat the information disclosed by Robbins as confidential and would protect it from disclosure to third parties. (Id.)

In June 1999, Robbins flew to St. Paul, Minnesota, to present his plans to EcoWater's Board of Directors. (Id.) Robbins incurred approximately $1,500 in expenses associated with this travel, which were not reimbursed. (Id.) During the meeting, Robbins presented three sample commercials

on videotape, eight copies of a business/marketing plan and a power point presentation. (See Compl. at 3.) He also presented statistics showing that the majority of people who do not drink tap water purchase bottled water, rather than utilizing "entire home water conditioning systems." (See Compl. at 4.) Ultimately, Robbins presented the unique selling slogan: "bottled water quality at every tap," which he wrote and had protected by Tennessee State Trademark. (See id. see also Pls.' Mem. In Opp'n to Mot. Diss. at 3 ("Pls.' Opp'n. Mem.").)

After the meeting, Robbins went to lunch with several EcoWater Directors where the parties discussed a letter of intent, however, no deal was signed. (See Compl. at 4.) Once Robbins returned to Tennessee, negotiations involving EcoWater representatives, including Anne Bowman, National Marketing Director, Jay Weres and Chris Wilker continued. (Id.) As part of the negotiations, EcoWater invested approximately $20,000 in advertising and testing the concept in Nashville, Tennessee. (Id.) The results were extremely favorable and were forwarded to EcoWater while Robbins awaited a response. (See Compl. at 5.) Plaintiffs never heard from EcoWater. (Id. at 5.) Eventually, Robbins requested that EcoWater return all of the materials he supplied. (Id.) EcoWater returned one copy of the marketing/business plan, but retained everything it obtained from the initial meeting and in connection with the trial-run. (Id.; see also Pls.' Opp'n. Mem. at 4.)

Sometime in August 2000, Robbins was informed by Victor Boutschek and Curt Huckaba, two top EcoWater dealers who are also members of the Dealer Advisory Council, that EcoWater was going to implement a new advertising program employing the information, ideas, strategies and unique selling slogan that Plaintiffs developed and disclosed confidentially to EcoWater. (See Compl. at 5; see also Pls.' Opp'n. Mem. at 4.) EcoWater subsequently hired Kerker Marketing Communications and launched an aggressive international marketing campaign with Plaintiffs'

unique concept: "bottled water from every tap." (Id.) The advertising campaign featured prints depicting water flowing from taps that have morphed into bottle shapes and contained language such as, "You can get this same bottled water quality right from your tap." (Id.) The thrust and theme of EcoWater's campaign was substantially similar to what Plaintiffs presented to EcoWater at the initial meeting and in subsequent negotiations. (See Complaint at 6; see also Pls.' Opp'n. Mem. at 4-5.)

## II. STANDARD OF REVIEW

In the case of a defendant's 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court is limited to considering the allegations of the complaint, must take those allegations as true and must view the complaint in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Ring v. First Interstate Mfg., Inc., 984 F.2d 924 (8th Cir. 1993); Klett v. Pim, 965 F.2d 587, 589 (8th Cir. 1992); United States v. Aceto Agric. Chem. Corp., 872 F.2d 1373, 1376 (8th Cir. 1989); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986). The court should not grant a motion to dismiss merely because the complaint does not state with precision every element of the offense necessary for recovery. See 5 Wright & Miller, Federal Practice and Procedure: Civil, §§ 1216 at 120 (1969). A complaint is sufficient if it contains "allegations from which an inference can be drawn that evidence on these material points will be introduced at trial." Id. at 122-23. Moreover, a court should not dismiss a complaint unless it "appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his complaint which would entitle him to relief." Conley, 335 U.S. at 45-46. Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to

relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982); see also Palmer v. Tracor, Inc., 856 F.2d 1131 (8th Cir.1988); Baxley-DeLamar Monuments, Inc. v. American Cemetery Ass'n, 843 F.2d 1154 (8th Cir. 1988).

## III. CONCLUSIONS OF LAW

### A. Defendant's Motion to Dismiss Counts I & VIII (Contract Claims)

EcoWater contends that Focus lacks standing to assert Breach of Contract and Breach of Duty of Loyalty claims because Focus was not a party to the Confidential Disclosure Agreement ("Agreement"). (See Compl., see also Def.'s Supp. Mem. at 4.) Defendant specifically argues that the Agreement identified Robbins as the disclosing party but made no mention of Focus, therefore, Focus was and is not a party to the Agreement. (Def.'s Supp. Mem. at 4.)

Plaintiffs respond that it is incorrect to conclude that Focus was not a party to the Agreement because Robbins, as sole shareholder and president of Focus, had the authority to bind Focus to the Agreement. (See Pl.'s Opp'n. Mem. at 5-7.) Plaintiffs claim that the intent of the Agreement was to bind Defendant and Focus, an advertising and marketing corporation, for the purpose of "advertising and lead generation programs." (Id.; see also Compl.) Furthermore, the nature of Robbins' marketing presentations and disclosures to EcoWater during the initial meeting and thereafter, made Focus' role in the negotiations clear. (See Pl.'s Opp'n. Mem. at 5.) As such, Plaintiffs contend that they have standing to assert both the Breach of Contract and the Breach of the Duty of Loyalty claims.

In Minnesota, the president of a corporation may sign his or her individual name to a contract with the intent to bind the corporation. See Towers v.Stevens Cattle Co., 86 N.W. 88 (Minn. 1901). "A contract by a corporate officer need not, however, be made and signed in the name of the

corporation to render the corporation liable thereon, if it was the intention of the parties to bind the corporation." MacDonald vs. Winfield Corp., 82 F. Supp. 929, 930 (E.D. Pa. 1948) (citations omitted).

In the instant case, the contract in question was a confidentiality agreement based on marketing/advertising advice and planning Focus was to provide for EcoWater. Since Focus was in the business of providing marketing and advertising expertise and there was nothing to indicate that it was a personal Agreement between Robbins and EcoWater, Robbins, in his capacity as sole shareholder and President of Focus, only intended to bind the company, not himself personally, to the Agreement. In addition, the parties' behavior subsequent to signing the agreement confirms that it was meant to be a business contract. Negotiations that took place after the signing of the Agreement had to do with Focus' marketing/advertising plans for EcoWater and were not of a personal nature whatsoever.

Thus, in viewing the evidence in the light most favorable to Plaintiffs, this Court is of the opinion that Focus is most likely a party to the Agreement. As such, Plaintiffs have not failed to state a claim upon which relief can be granted with regard to the Breach of Contract and Breach of Duty of Loyalty claims. Accordingly, this Court will recommend that Defendant's Motion to Dismiss Count I and Count VIII of the Complaint be denied.

**B. Defendant's Motion to Dismiss Count III (Conversion Claim)**

EcoWater alleges that Plaintiffs' marketing plan cannot support a viable claim for conversion because: (1) Minnesota has not extended conversion claims to intellectual property; and (2) there has been no substantial and extended interference with Plaintiffs' property. (See Def.'s Supp. Mem. at 5.) On the other hand, Plaintiffs respond that the marketing plan was not merely an intangible idea,

but also embodied a document, videotape and a PowerPoint presentation, each of which was tangible personal property and thus subject to conversion. (See Pl.'s Opp'n. Mem. at 7-9.)

"Under Minnesota law, conversion is defined as an act of willful interference with the *personal property* of another which is without justification or which is inconsistent with the rights of the person entitled to the use, possession or ownership of the property." Dain Bosworth, Inc. v. Goetze, 374 N.W. 2d 467. 471 (Minn. Ct. App. 1985) (emphasis added). There is no distinction made between tangible and intangible personal property.

Here, Plaintiffs have asserted that Defendant converted their personal property, including a marketing plan idea, as well as tangible documents, videotape and PowerPoint Presentation. Given Minnesota law concerning the conversion of personal property, the tangible property listed here is sufficient to support a conversion claim for both Plaintiffs' tangible and intangible property. Thus, Plaintiffs have succeeded in asserting a claim upon which relief may be granted, and as such, this Court will recommend that Defendant's Motion to Dismiss Count III of the Complaint be denied.

**C. Defendant's Motion to Dismiss Count IV (Intentional Misrepresentation Claim), Count V (Negligent Misrepresentation Claim), and Count X (Fraud Claim) Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b)**

Defendant argues that the above counts "sound in fraud" and are subject to the heightened pleading requirements of Fed. R. of Civ. P. 9(b). (See Def.'s Supp. Mem. at 9.) As such, the Complaint "must specify the who, what, when, where and how of the alleged fraud." It is Defendant's contention that Plaintiffs have not sufficiently specified the above particulars in any of the above stated counts subject to Fed. R. Civ. P. 9(b). (See Def.'s Supp. Mem. at 9-11.)

Plaintiffs agree that the above stated counts of the Complaint are subject to heightened pleading requirements pursuant to Fed. R. Civ. P 9(b), but argue that EcoWater failed to look at the

whole Complaint as they are required to do. (See Pl.'s Opp'n. Mem. at 9-10.) Furthermore, Plaintiffs contend that "the special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage in the case, to potentially damaging allegations of immoral and criminal conduct." Abels v. Farmers Commodities Corp., 2001 WL 740870 (8th Cir. 2001). Plaintiffs argue that the Complaint sufficiently alleges the "who, what, where, when and how" of the various fraudulent claims to enable EcoWater to formulate specific responses. (See Pl.'s Opp'n. Mem. at 9-10.)

Assuming that all of the Plaintiffs' allegations in the Complaint are true, this Court believes that Plaintiffs have sufficiently plead the "who, what, where, when and how" of the three fraud claims pursuant to Fed. R. Civ. P. 9(b). See In re Green Tree Fin. Corp. Stock. Lit., 61 F.Supp. 2d 860, 869 (D. Minn. 1999). As to the "who," Plaintiffs have identified Anne Bowman, Jay Weres, Chris Wilker, and members of EcoWater's Board of Directors. (See Complaint at 2, 4, 5, 9, 14.) As to the "when" and "where"Plaintiffs have also identified the time, May to July 1999, and the place, St. Paul, Minnesota, that the alleged fraud occurred. (See Complaint at 2-6.) In satisfying the "what" requirement, Plaintiffs also alleged that the individuals mentioned above as well as EcoWater's Board of Directors made false statements to Plaintiffs to obtain access to confidential information without any intention of paying for the information and property. (See Complaint at 9, 10, 14.) Finally, Plaintiffs have sufficiently alleged the "how" component by stating that Defendant induced Plaintiffs to disclose the information for EcoWater's own gain. (Id.) Therefore, it appears that Plaintiffs have pled their fraud claims with sufficient particularity, and as such, this Court will recommend that Defendant's Motion to Dismiss Counts IV, V and X pursuant to Fed. R. Civ. P.

12(b)(6) and 9(b) be denied.

**D. Defendant's Motion to Dismiss Count IX (Unfair Competition Claim)**

Defendant claims that in order to assert an unfair competition claim under Minnesota law, Plaintiffs "must identify the underlying tort which is the basis for the . . . claim." (Def.'s Supp. Mot. at 7.) EcoWater first argues that Plaintiffs failed to identify the underlying tort for their claim and as such, the claim should be dismissed. (Def.'s Supp. Mot. at 7.) In their reply, Defendant further argues that Plaintiffs' Minnesota Deceptive Trade Practices Act ("MNDTPA") claim cannot be the underlying tort to support an unfair competition claim.

Plaintiffs respond that they have identified several underlying torts giving rise to the unfair competition claim, including, deceptive trade practices, misappropriation, conversion and breaches of duty of loyalty and confidentiality. (Pls.' Opp'n. Mem. at 11.) Plaintiffs further argue that although some of the underlying torts are duplicative of other counts in the Complaint, they are within their rights to plead in the alternative under Fed. R. Civ. P. 8(e).

Under Minnesota law, if the underlying tort is duplicative of another count in the complaint, the claim for unfair competition must be dismissed. See Zimmerman Group, Inc. v. Fairmont Foods of Minnesota, Inc., 882 F. Supp. 892, 895 (D. Minn. 1994). Consequently, since Count III (Conversion) and Count II(Misappropriation) are listed as independent claims in Plaintiffs' Complaint, they cannot serve as the underlying tort for the Unfair Competition claim. Similarly, Count VIII (Breach of the Duty of Loyalty and Confidentiality) is not only an independent claim in the Complaint, but more importantly, it is not a tort and cannot serve as the underlying tort for the Unfair Competition claim. Finally, since the parties have stipulated to the dismissal of Count VII (MNDTPA claim), Count VII is the only non-duplicative tort offered by the Plaintiffs that may serve

as the underlying tort for the Unfair Competition claim.

The next step is to determine whether an MNDTPA claim can properly serve as the underlying tort in an Unfair Competition claim here. Torts that have been recognized as sufficient bases for an Unfair Competition claim in Minnesota in the past include product disparagement, tortious interference with contractual interests, and *improper use of trade secrets*. See Cybertropics Corp. v. Yamaha Motor Company Ltd.,1996 WL 673161 (D. Minn. 1996) (citing Advanced Training Systems, Inc. v. Caswell Equipment Co., 352 N.W.2d 1 (Minn. 1984); United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628 (Minn. 1982) (emphasis added). Although an MNDTPA claim has never been specifically identified as the underlying tort, an MNDTPA claim seems sufficiently analogous to "improper use of trade secrets" tort which has been recognized as the underlying tort in an unfair competition claim. See Cybertropics Corp. v. Yamaha Motor Company Ltd.,1996 WL 673161 (D. Minn. 1996). As such, this Court believes that Plaintiffs' MNDTPA claim is a permissible underlying tort for the unfair competition claim. Given the foregoing and the fact that this Court must afford Plaintiffs the benefit of all reasonable inferences in deciding a motion to dismiss, this Court believes that Plaintiffs have sufficiently stated their claim and recommends that Defendant's motion to dismiss Count IX (unfair competition) of the Complaint be denied.

**E. Defendant's Motion to Dismiss Count XII (Unjust Enrichment Claim), Count XIII (Quantum Meruit) and Count XI (Constructive Trust)**

Defendant argues that Plaintiffs' equitable claims are barred by Minnesota law because "the existence of an express contract between the parties precludes recovery under the theories of quasi-contract, unjust enrichment and quantum meruit." (Def.'s Supp. Mot. at 8.) EcoWater contends that because Plaintiffs have alleged the existence of oral and written agreements with the

Defendant, their equitable relief claims should be dismissed.

Plaintiffs respond that EcoWater blurs the distinction between Plaintiffs' right to recover on these equitable claims if the existence of a contract is ultimately proved at trial, versus Plaintiff's right to plead their equitable claims in the alternative to guard against the possibility that the existence of the contract may not be established at trial. (Pls.' Opp'n. Mem. at 12.)

According to Fed. R. Civ. P 8(e)(2), "a party may . . . state as many separate claims or defenses as the party has regardless of the consistency and whether based on legal, equitable, or maritime grounds." Under this rule, although Plaintiffs may not recover under both contract and equitable theories, they do retain the right to request legal and equitable relief at the pleading stage. See also Zic v. Italian Government Travel Office, 130 F. Supp.2d 991,997 (N.D. Ill. 2001). Consequently, this Court will recommend that Defendant's Motion to Dismiss Counts XI, XII, and XIII of the Complaint be denied.

**F. Defendant's Motion to Dismiss Count VII (Deceptive Trade Practices Claim) and Count XIV (Civil Conspiracy)**

This court recommends that these motions be granted pursuant to the parties' stipulation during the October 26, 2001, hearing.

## IV. RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

A. Defendant EcoWater's Motion to Dismiss Counts I, III, IV, V, VIII, IX, X, XI, XII, and XIII of the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) be **DENIED**;

B. Defendant EcoWater's Motion to Dismiss Count VII and Count XIV of the Complaint be **GRANTED** pursuant to the parties' stipulation.

DATED: Nov. 29, 2001

FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection in made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.